# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

| | |
|---|---|
| **DANNY VICHENSONT AND TERESA VICHENSONT,** <br>    Plaintiffs <br><br> vs. <br><br> **UNITED STATES OF AMERICA,** <br><br>    Defendant | **NO. 1:25-cv-00081** |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Danny Vichensont and Teresa Vichensont bring this complaint under the Federal Tort Claims Act, 28 U.S.C. § 2674. Plaintiffs complain of the United States and would show the following:

## PARTIES

1.1.   This is a medical malpractice case that arises out of bodily injuries caused by agents and employees of the United States at the Carl R. Darnall Army Medical Center.

1.2.   Plaintiff Danny Vichensont is a veteran. He and his wife, Teresa Vichensont reside in Manvel, Texas.

1.3.   Defendant is the United States of America, its officers, agents, employees, and representatives.

## JURISDICTION, SERVICE & VENUE

2.1.    This Federal District Court has jurisdiction because this action is brought under 28 U.S.C. § 2671–80, commonly known as the Federal Tort Claims Act.

2.2.    The United States of America may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Summons and Complaint on the acting United States Attorney Jamie Esparza, United States Attorney for the Western District of Texas by certified mail, return receipt requested at his office:

>   The United States Attorney's Office
>   ATTN: Civil Process Clerk
>   601 NW Loop 410, Suite 600
>   San Antonio, Texas 78216

2.3.    Service is also affected by serving a copy of the Summons and Complaint on Merrick B. Garland, Attorney General of the United States, by certified mail, return receipt requested at:

>   The Attorney General's Office
>   ATTN: Civil Process Clerk
>   950 Pennsylvania Avenue, NW
>   Washington, DC 20530-0001

2.4.    Venue is proper in this judicial district under 28 U.S.C. § 1402(b) because the United States of America is a defendant and the acts and omissions complained of in this lawsuit occurred in this judicial district.

## AGENCY

3.1.     This case is commenced and prosecuted against the United States of America to and in compliance with Title 28 U.S.C. §§ 2671–80, the Federal Tort Claims Act. Liability of the United States is predicated specifically on 28 U.S.C. § 2674 because the personal injuries and resulting damages of which the complaint is made were proximately caused by the negligence, wrongful acts and/or omissions of employees and/or agents of the United States of America working for the Department of the Army, while acting within the scope of their office, employment, and/or agency under circumstances where the United States of America, if a private person, would be liable to the Plaintiff in the same manner and to the same extent as a private individual.

3.2.     The United States Department of the Army is an agency of the United States of America.

3.3.     The United States of America, through its agency, the Department of the Army, at all times material to this lawsuit, owned, operated, and controlled Carl R. Darnall Army Medical Center, and staffed it with its agents, servants, or employees.

3.4.     At all times material to this lawsuit, including in 2021, providers at the Carl R. Darnall Army Medical Center were acting within the course and scope of their employment when providing treatment to Danny Vichensont.

3.5.     In 2022, the Carl R. Darnall Army Medical Center provided care and treatment Danny Vichensont. Danny Vichensont was a patient of the

Carl R. Darnall Army Medical Center and its providers had a doctor-patient relationship with him.

3.6. The following individuals were employees of the United States of America or its agency, acting within the course and scope of their employment when they provided treatment to Danny Vichensont: John Ponzo, MD, Daniel Eric Wingard, DO, Gabriel Pivawer, MD, Holly Kathleen Payne, MD, Gilberto Aaron Nieves, MD, Christina L Chadwick, DO, Rebekkah Hendrick, Lawrence Nicholas Masullo, MD, Peter Carr, MD (resident), Stephen Ellison, MD, Samuel Doerle, MD (resident), Reis Brandon Ritz, MD, Dylan Clabaugh, DO, Meghan Raleigh, MD, Cody Manning, MD, Michael Chapman, MD, Reggie Taylor, MD, Nicholas Whalen, DO, and Shayan Amir Gates, DO.

## JURISDICTIONAL PREREQUISITES

4.1. Pursuant to 28 U.S.C. §§ 2672 and 2675(a), the claims set forth here were filed with and presented administratively to the Department of Veterans Affairs on February 14, 2024.

4.2. The claim of Danny Vichensont set forth a "sum certain" of $30,000,000.

4.3. The amended claim of Teresa Vichensont set forth a "sum certain" of $30,000,000.

4.4. Greater than six months has expired since the claims were presented and the claims have not been denied.

4.5. No exception to the Federal Tort Claims Act, 28 U.S.C. § 2680, bars this lawsuit.

4.6. Accordingly, Plaintiff has complied with all jurisdictional prerequisites and conditions precedent to the commencement and prosecution of this suit.

## FACTS

5.1. On December 4, 2022, Mr. Vichensont, a 63 year-old veteran, experienced a sudden onset of low back pain and lower extremity numbness while playing golf and attempting to lift his golf bag. He reported slipping while attempting to get off of the golf cart later the same day due to a lack of lower extremity strength.

5.2. By December 7, 2022, Mr. Vichensont developed progressive bilateral lower extremity weakness and a loss of sensation from the mid-abdominal level (indicating thoracic spine injury) that rendered him unable to walk. He presented to the Emergency Department (ED) at the Carl R. Darnall Army Community Hospital on December 8, 2022. He underwent x-rays of the lumbosacral spine, hips and pelvis. Mr. Vichensont was diagnosed with sciatica and sent home.

5.3. On December 12, 2022, Mr. Vichensont again presented to the ED with complaints of low back pain and bilateral lower extremity weakness for a week, which had worsened since yesterday. He was in a wheelchair and unable to stand. He described the pain as "burning" that radiated down his bilateral lower extremities. He reported that he had been completely unable to walk since the day before due to lower extremity numbness and weakness.

The overall neurologic exam was normal, with an intact distal neurovascular exam. The post-void ultrasound (US) demonstrated 25 ml residual urine. His CT scan showed mild to moderate stenosis at L4-5. Mr. Vichensont was administered IV Toradol with mild improvement, but he remained unable to walk, which his provider dismissed as "due to anxiety." The case was discussed with Dr. Neivas, and he was admitted for further evaluation and observation due to his inability to walk.

5.4.    Though he was admitted, there was no consideration for an urgent neurosurgical consult despite his presentation and he was started on 975 mg Tylenol Q8H, Naproxen 500 mg BID, Lyrica 75 mg BID, and Tizanidine 4 mg for pain. He was discharged home on December 13, 2022.

5.5.    The next day, Mr. Vichensont still could not walk and he returned to the ED on December 14, 2022. He reported that he fell the day before and had to drag himself to the bathroom. He stated the onset of symptoms since lifting a bag of golf clubs. He had not had a bowel movement for five days and reported difficulty urination. He presented with BLE (bilateral lower extremity) weakness and numbness with concern for cauda equina versus other spinal pathology. Vital signs were within normal limits, and the exam revealed 5/5 strength to all extremities and diffusely decreased sensation to touch to BLE and perineal region. He was readmitted to the hospital to Family Medicine Inpatient Service for persistent lower extremity weakness.

5.6.    He underwent an MRI Lumbar Spine without contrast due to "concern for cauda equina versus other spinal pathology." The MRI was interpreted to show mild lumbar levoscoliosis, multilevel disc bulging, and left paracentral and foraminal herniation at L3-4, L4-5, and L5-S1.

5.7.    On December 15, 2022, Mr. Vichensont had no significant change since admission. PT, Neurology, and Psychiatry services had evaluated him with "inconsistent examinations." Although his clinical presentation was "not a classic Guillain Barre Syndrome," his CSF fluid was noted to be consistent with albumin cytologic dissociation. Lumbar MRI imaging was telephonically reviewed with the Neurologist and a combined decision was made to pursue treatment with a five-day course of intravenous immunoglobulin (IVIG) for presumptive Guillain-Barre Syndrome. There was still no consideration for a neurosurgical evaluation.

5.8.    On December 17, 2022, he was evaluated by Neurology for low back pain and GBS of the Acute Inflammatory Demyelinating Polyneuropathy (AIDP) type. Mr. Vichensont demonstrated atypical features for GBS. Spinal imaging had shown no attributable processes other than cervical disc protrusion. Dr. S. Gates missed the T8 lesion. On December 17, 2022, it was noted that he had "inconsistent neurological examinations" but those were assumed to be secondary to "psychogenic components." He was admitted for 3 additional nights with the plan to discharge him to acute rehabilitation.

5.9.    On December 18, 2022, he was seen by Internal Medicine. He demonstrated 2/5 strength in BLE with toe, plantar, and dorsiflexion and 1/5 strength in leg and thigh flexion. He was planned for transfer to an acute rehab facility for ongoing physical therapy rehabilitation. Physical examinations remained inconsistent and atypical for AIDP. The BLE neuro exam had deteriorated.

5.10.   On December 22, 2022, Mr. Vichensont had completed a five-day course of IVIG for GBS of AIDP subtype with continued concerns of

deconditioning and debility secondary to neurologic symptoms in the lower extremities. He was again documented with continued inconsistent neurological examinations. The discharge care team included Holly Payne, MD (Family Medicine), Christina Chadwick, DO (Family Medicine), and Michael Chapman (Family Medicine). Mr. Vichensont was diagnosed with lumbago with sciatica, functional neurologic disorder, GBS in the AIDP form, and muscle weakness of the LEs.

5.11. Mr. Vichensont attended physical therapy and occupational therapy at Memorial Hermann Rehab on December 23, 2022.

5.12. Mr. Vichensont presented to the Houston DeBakey VA Medical Center Emergency Department on January 23, 2023, in a wheelchair, complaining of the same worsening lower extremity weakness that began on December 7, 2022, and rectal bleeding with bowel movements. He was evaluated by neurology, which immediately recognized his presentation to be consistent with myelopathy, associated with his T8 site of spinal cord compression. On January 24, 2023, an MRI was performed which showed C3-C4 left paracentral disc osteophyte complex causing moderate central spinal stenosis, as well as a T8-T9 left paracentral mass most likely disc extrusion compressing the thoracic cord with abnormal cord high T2 signal intensity. Unlike Darnall, the Houston VA immediately initiated a consult with neurosurgery, which planned surgical intervention.

5.13. When he was seen by neurosurgery, it was documented that he presented with seven weeks of bilateral lower extremity weakness with diminished sensation from the abdomen down. Neurosurgery documented that he was wheelchair dependent since December 7, 2022, along with "weeks of complete paralysis."

5.14. On January 26, 2023, Dr. Mosier, Neurology, told Mr. Vichensont and his daughter that based on the history provided, the clinical exams, the MR images of 1/24/23, his paraparesis, thoracic sensory level, spasticity and clonus were best explained by compressive myelopathy related to disc herniation and cord signal changes at T8-T9. He explained that the goal of decompressive surgery was to prevent further progression of deficits because he could still wiggle his toes and had some bowel/bladder function left. He warned post-operative improvement of other functions could not be promised and seemed unlikely "given the weeks that have elapsed since onset of symptoms."

5.15. On January 26, 2023, the VA neurosurgeon Dr. Alfonso Fuentes Pinillos, spoke to Mr. Vichensont and his daughter about his condition, recounting the weeks of BLE weakness and inability to walk since December 7, 2022, along with weeks of complete paralysis. He noted that no provider ever discussed surgery with Mr. Vichensont at the time of his MRI of the thoracic spine on December 15, 2022.

5.16. The VA neurosurgeon explained to the family that he reviewed the MRI of December 15, 2023, and compared it to the MRI of January 2023. Dr. Pinillos told the family that "there was no significant changes, meaning that there was at that time spinal cord compression caused by what seems to be disc material extruded into the spinal canal at T8-9" on December 15, 2022. Dr. Pinillos explained to the family that "since it had been 7 weeks since he developed severe LE weakness (paraplegia) and after any injury to the spinal cord, for any given indicated intervention time is critical," that a positive outcome could not be guaranteed given the delay. Mr. Vichensont agreed to the surgery and hoped for the best outcome.

5.17.    He underwent T8/T9 laminectomies, microdiscectomy and T9 pediculectomy on January 30, 2023. He was transferred to rehabilitation on February 8, 2023. He received ongoing care at the Houston VA through April 2023.

5.18.    Darnall Army Medical Center neglected to treat Mr. Vichensont appropriately when he presented with a T8-9 spinal cord injury in December 2022 due to large disc herniation. He was misdiagnosed across multiple providers, including Neurology, resulting in permanent paraplegia. There was failure across multiple providers to request a Neurosurgery consult and a delay in MRI complete spinal screening. Mr. Vichensont was admitted on December 12, 2022, with the inability to ambulate, sensory loss, another fall and concern for cauda equina. He completed a lumbar MRI on December 14, 2022, and a thoracic and cervical MRI on December 15, 2022. Spinal lumbar MRI imaging was telephonically reviewed with the Neurologist on December 15 with no consideration for neurosurgical consult. He was discharged to an acute rehab facility on December 22, 2022, with an unrecognized spinal cord injury. Approximately one month later, with no improvement, a neurosurgeon at the DeBakey VA reviewed the same December 15, 2022 MRI from Darnall Army Medical Center and concluded that he had an undiagnosed thoracic spinal cord injury in December that required surgical intervention but was never performed or even considered.

5.19.    Because of Army medical providers' negligence, Mr. Vichensont now suffers from paraplegia, neurogenic bladder and bowel, neuropathic burning foot pain, onset of PE in February 2023, and prolonged hospitalization and rehabilitation.

## CAUSES OF ACTION

6.1.    Through its employees, agents, or servants, the Defendant United States of America, was negligent in one or more of the following respects:

>  (a) In failing to timely and properly monitor Danny Vichensont;
> 
>  (b) In failing to timely and properly care for Danny Vichensont;
> 
>  (c) In failing to timely and properly assess Danny Vichensont;
> 
>  (d) In failing to timely and properly diagnose Danny Vichensont;
> 
>  (e) In failing to timely and properly treat Danny Vichensont;
> 
>  (f) In failing to timely and properly refer Danny Vichensont to a neurosurgeon for consultation;
> 
>  (g) In failing to timely and properly assess the radiology of Danny Vichensont, including but not limited to the MRI dated December 15, 2022;
> 
>  (h) In failing to timely and properly recognize spinal cord injury requiring timely surgical intervention;
> 
>  (i) In failing to timely and properly offer surgery to Danny Vichensont; and
> 
>  (j) In failing to timely and properly perform surgery on Danny Vichensont to relieve his spinal cord injury.

6.2.    At all times relevant to this lawsuit, the officers, employees, agents, or representatives of the United States were negligent and

proximately caused the foreseeable injuries and damages sustained by the Plaintiffs.

## DAMAGES

7.1.     As a direct and proximate result of the Defendant's negligent acts or omissions, Danny Vichensont has sustained damages and injuries including, but not limited to:

    (a) Past and future physical pain and suffering;

    (b) Past and future mental suffering and mental pain and anguish;

    (c) Past and future medical, health care and attendant care expenses;

    (d) Past and future loss of consortium with his wife;

    (e) Past and future physical impairment and disability;

    (f) Past and future physical disfigurement;

    (g) Past and future loss of enjoyment of life;

    (h) Out-of-pocket expenses; and

    (i) Other pecuniary damages.

7.2.     As a direct and proximate result of the Defendant's negligent acts or omissions, Teresa Vichensont has sustained damages and injuries including but not limited to:

    (a) Past and future mental pain and anguish;

    (b) Past and future loss of consortium with her husband;

(c) Past and future loss of household services;

(d) Past and future economic value of attendant care provided to her husband up to the time of trial; and

(e) Other pecuniary damages.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs request that the Defendant be cited in terms of law to appear and answer herein: that upon final trial and hearing hereof, the Plaintiffs have judgment against the Defendant, for the amount of actual damages; and for such other and different amounts as they shall show by proper amendment before trial; for post judgment interest at the applicable legal rate; for all Court costs incurred in this litigation; and for such other and further relief, at law and in equity, both general and special, to which the Plaintiffs may show themselves entitled and to which the Court believes them deserving.

Dated this 16th day of January, 2025.

Respectfully Submitted,

/s/ Laurie Higginbotham
LAURIE HIGGINBOTHAM
  lhigginbotham@nationaltriallaw.com
  Texas State Bar #50511759
STEVEN HASPEL
  shaspel@nationaltriallaw.com
  Texas State Bar #24109981

        WHITEHURST, HARKNESS,
          BREES, CHENG, ALSAFFAR,
          HIGGINBOTHAM, & JACOB
          P.L.L.C.
1114 Lost Creek Blvd. Suite 410
Austin, TX 78746
(512) 476-4346 (o)
(512) 467-4400 (f)
Attorneys for the Plaintiffs